The Honorable James L. Robart

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

SEATTLE METROPOLITANS HOCKEY LLC,
a Washington limited liability company,

11

12

                    Plaintiff,

13

        v.

14

SEATTLE HOCKEY PARTNERS LLC, a
Delaware limited liability company,

15

16

                    Defendant.

17

18

No. 23-cv-01989-JLR

**DEFENDANT SEATTLE
HOCKEY PARTNERS LLC'S
MOTION TO DISMISS UNDER
FED. R. CIV. P 12(b)(6)**

**NOTE ON MOTION CALENDAR:
FEBRUARY 16, 2024**

**ORAL ARGUMENT REQUESTED**

19

20

21

22

23

24

25

26

27

DEF.'S MOT. TO DISMISS
(No. 23-cv-01989-JLR)

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND .................................................................................................. 2

    A.   Seattle Hockey Partners and the Kraken ................................................ 2

    B.   The Seattle Metropolitans ....................................................................... 3

    C.   Paul Kim .................................................................................................. 3

    D.   The NHL Winter Classic ......................................................................... 4

    E.   This Lawsuit ............................................................................................ 7

III.  ARGUMENT ....................................................................................................... 7

    A.   Kim Fails to State a Claim for Tortious Interference. ............................ 8

        1.   Kim Fails to Allege the Existence of a Specific Business Expectancy ...... 9

        2.   Kim Fails to Allege That the Kraken Knew of Any Specific Business Relationships with Identifiable Third Parties. ........................................... 11

        3.   Kim Fails to Allege That the Kraken Terminated the Metropolitans' Business Expectancies. ........................................................................... 12

    B.   Kim Fails to State a Claim for Conversion. ........................................... 13

IV.   CONCLUSION.................................................................................................... 16

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

## TABLE OF AUTHORITIES

2
**Page(s)**

**Federal Cases**

3
*Ashcroft v. Iqbal*,

4
    556 U.S. 662 (2009).................................................................................7, 8, 10, 14

5
*Batson v. Deutsche Bank Tr. Ams.*,

6
    2017 WL 3754827 (E.D. Wash. 2017) .................................................................13

7
*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544 (2007).................................................................................................8

8
*Bombardier Inc. v. Mitsubishi Aircraft Corp.*,

9
    383 F. Supp. 3d 1169 (W.D. Wash. 2019).............................................................13

10
*Calence, LLC v. Dimension Data Holdings*,

11
    2007 WL 1526349 (W.D. Wash. 2007) ...............................................................16

12
*Diederich .v Providence Health & Servs.*,

    2011 WL 13195986 (W.D. Wash. 2011) .............................................................10

13
*Graham v. Cingular Wireless LLC*,

14
    2006 WL 354969 (W.D. Wash. 2006) .................................................................12

15
*Group14 Techs., Inc. v. Nexeon Ltd.*,

16
    2023 WL 3599580 (W.D. Wash. 2023) ...............................................................11

17
*Int'l Paper Co. v. Stuit*,

    2012 WL 1857143 (W.D. Wash. 2012) .................................................................8

18
*Lopez v. Aeropostale, Inc.*,

19
    2012 WL 13059794 (S.D.N.Y. 2012) ..................................................................16

20
*Monster v. Creatd, Inc.*,

    2022 WL 1624713 (W.D. Wash. 2022) .................................................................9

21
*O'Donnell/Salvatori Inc. v. Microsoft Corp.*,

22
    2021 WL 535128 (W.D. Wash. 2021) .................................................................10

23
*PBTM LLC v. Football Nw., LLC*,

24
    511 F. Supp. 3d 1158 (W.D. Wash. 2021).............................................................8

25
*Seaside Inland Transp. v. Coastal Carriers LLC*,

    2018 WL 5926984 (E.D. Wash. 2018) ...............................................................14

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Shetel Indus. v. Adin Dental Implant Sys., Inc.*,
    493 F. Supp. 3d 64 (E.D.N.Y. 2020) ..................................................................... 16

*St. Marie v. Jefferson Cnty.*,
    2023 WL 5509305 (W.D. Wash. 2023) ................................................................ 13

*Stuc-O-Flex Int'l, Inc. v. Low & Bonar, Inc.*,
    2019 WL 4688803 (W.D. Wash. 2019) ........................................................ 8, 9, 12, 13

*Vyas v. Wallach*,
    2006 WL 8454883 (W.D. Wash. 2006) ................................................................ 14

**State Cases**

*Alhadeff v. Meridian on Bainbridge Island, LLC*,
    167 Wn.2d 601 (2009) ........................................................................................ 13

*Buron v. City of Spokane*,
    16 Wn. App. 2d 769 (2021) .................................................................................. 2

*Calbom v. Knudtzon*,
    65 Wn.2d 157 (1964) .......................................................................................... 11

*Corbis Corp. v. Stone*,
    167 Wn. App. 1019, 2012 WL 1020250 (2012) ............................................ 14, 16

*Manna Funding, LLC v. Kittitas Cnty.*,
    173 Wn. App. 879 (2013) .................................................................................... 10

*In re Marriage of Langham & Kolde*,
    153 Wn.2d 553 (2005) ........................................................................................ 14

*Martin v. Sikes*,
    38 Wn.2d 274 (1951) ...................................................................................... 13, 16

*Pac. Nw. Shooting Park Ass'n v. City of Sequim*,
    158 Wn.2d 342 (2006) ................................................................................ 1, 9, 12

*Repin v. State*,
    198 Wn. App. 243 (2017) .................................................................................... 13

*Sea-Pac Co. v. United Food & Com. Workers Union 44*,
    103 Wn.2d 800 (1985) ........................................................................................ 10

*Woods View II, LLC v. Kitsap Cnty.*,
    188 Wn. App. 1 (2015) ........................................................................................ 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**Other Authorities**

Demetrius Bell, *Seattle Releases the 'Kraken' Nickname, Logos And Colors Ahead of 2021-22 NHL Debut*, Forbes (Jul. 23, 2020) ................................................................3

Chris Creamer, *NHL Winter Classic: The Logos, Uniforms and More*, SportsLogos.net (Jan. 1, 2024) ...............................................................5, 7

ESPN, *Kraken Expansion Draft Live Results: Players Selected from 30 NHL Teams* (Jul. 21, 2021) ...................................................................................2

NHL, *History of the NHL Winter Classic* (last visited Jan. 18, 2024)........................................4, 5

Alison Lukan, *Winter Classic Jerseys Unveiled*, NHL (Nov. 22, 2023) ....................................6, 7

4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:70 (5th ed.).....14

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# I.     INTRODUCTION

Defendant Seattle Hockey Partners LLC owns and operates the Seattle Kraken professional ice hockey club (collectively, "Kraken"), a member club of the National Hockey League ("NHL").  On January 1, 2024, the Kraken participated in 2024 NHL Winter Classic hockey game against the Vegas Golden Knights, in which the Kraken's players wore uniforms displaying a distinctive Kraken Winter Classic logo ("Kraken WC Logo") in the Kraken's distinctive four team colors.  The Kraken also sold merchandise using the Kraken WC Logo. The Kraken WC Logo was also used extensively to promote and market the game by the NHL. This Kraken WC Logo is the subject of this lawsuit.

Plaintiff Paul Kim is the owner of Plaintiff Seattle Metropolitans Hockey LLC (collectively, "Kim") and its "Seattle Metropolitans" trademarks, which consist of a word mark to "Seattle Metropolitans" ("SM Word Mark") and a logo mark ("S Seattle Logo"). Disappointed that the Kraken and the NHL declined to license the S Seattle Logo for the Winter Classic, Kim filed this lawsuit on the eve of the event to try to pressure them into a future business deal.  Kim's primary allegation is that the Kraken WC Logo infringes his S Seattle Logo, in violation of the Lanham Act.  Kim has also included common law claims for tortious interference and conversion in his Complaint.  The Kraken respectfully ask the Court to dismiss Kim's common law claims for the following reasons:

*First*, the tortious interference claim fails because Kim fails to allege the existence of any specific business expectancy which the Kraken both knew of and intentionally interfered with, thereby causing identifiable third parties to terminate the relationship or expectancy.  *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 351 (2006).  Kim only makes the conclusory allegation that the Kraken caused Kim to lose out on potential sales to unidentified members of the general public.  He does not identify any specific sales he lost to any third party, claim that the Kraken knew of any of his business relationships, or explain how the Kraken's use of the Kraken WC Logo caused him to lose those sales.  Kim's reliance on conclusory and

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

generalized allegations about the loss of potential future income is insufficient to state a tortious interference claim.

*Second*, for purposes of conversion, Kim fails to allege that the Kraken willfully interfered with a chattel without lawful justification thereby depriving Kim of possession.  *Buron v. City of Spokane*, 16 Wn. App. 2d 769, 773 (2021).  Kim does not, and cannot based on his other allegations, plausibly allege that he has been deprived possession of his trademarks (which have not been recognized as chattels subject to conversion by Washington courts in any event).

## II.      BACKGROUND

### A.      Seattle Hockey Partners and the Kraken

The Kraken are the newest expansion franchise in the NHL, the world's premier professional hockey league.[1]  The Kraken were awarded their franchise in 2018 and, in 2021, began playing games in Seattle.  Compl. at 3 ¶ 7.  Since the Kraken's arrival, both Seattle sports fans and hockey fans worldwide have embraced and celebrated the Kraken and their unique identity, and the team has enjoyed early success on the ice.

The Kraken own several U.S. trademarks including the word mark "Seattle Kraken," and a distinctive logo ("Kraken S Logo," shown below), which are duly registered under United States Patent and Trademark Office ("USPTO") Reg. Nos. 6,487,799 and 6,450,361, respectively, for International Class 25 (clothing, including shirts), and under USPTO Reg. Nos. 6,577,561 and 6,577,557 for International Class 41 (sports services):



---

[1] ESPN, *Kraken Expansion Draft Live Results: Players Selected from 30 NHL Teams*, https://www.espn.com/nhl/story/_/id/31858223/seattle-kraken-expansion-draft-live-results-players-selected-30-nhl-teams (Jul. 21, 2021, 9:30 PM).

DEF.'S MOT. TO DISMISS
(No. 23-cv-01989-JLR) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    Defendant's Request for Judicial Notice ("RJN"), Exs. A-D.

2        The Kraken S Logo has been used on a wide variety of merchandise, including hockey

3    jerseys, shirts, hats, scarves, pucks, home décor, lanyards, flags, stickers, push toys, and

4    pennants.  The Kraken colors are "Kraken deep sea blue" (Pantone 296), "Kraken ice blue"

5    (Pantone 324), "Kraken boundless blue" (Pantone 2215), "Kraken shadow blue" (Pantone 549),

6    and "Kraken red alert" (Pantone 185), and the Kraken S Logo has been used by the team on

7    jerseys and other apparel in a variety of colors.[2]

8        **B.    The Seattle Metropolitans**

9        The Seattle Metropolitans were Seattle's first professional hockey team and, in 1917,

10   were the first U.S. team to win the Stanley Cup championship.  Compl. at 3 ¶ 6.  Because of this,

11   the Seattle Metropolitans hold a significant place in Seattle's hockey history, despite not playing

12   as a professional team for a nearly 100 years.  *Id.* at 3 ¶¶ 6-7.  The Kraken honor the Seattle

13   Metropolitans' history by hanging a banner in the Kraken's home arena commemorating the

14   Metropolitans' 1917 Stanley Cup championship.  *Id.* at 11 ¶ 28.  Indeed, when the Kraken

15   designed their Kraken S Logo in 2020, the team decided to create a new logo in the letter "S" to

16   honor the city of Seattle and its hockey history, but with a distinctive sea creature-evoking shape

17   and tentacle design to celebrate a new era of professional hockey.[3]

18       **C.    Paul Kim**

19       In 2016, Paul Kim obtained trademark registrations for the SM Word Mark and the

20   historic S Seattle Logo.  RJN, Exs. E-F.  While Kim now owns the narrow rights to use these two

21   marks on apparel, he has no other connection to the historical Seattle Metropolitans organization.

22   *See* Compl. at 3 ¶¶ 6-7.  Furthermore, Kim's rights to market and sell Seattle Metropolitans-

23

24   [2] *See* https://teamcolorcodes.com/seattle-kraken-colors/ (identifying Kraken Pantone colors);
     *see, e.g.*, https://shop.nhl.com/seattle-kraken/t-10432444+z-9484955-1432709151 (Kraken
25   merchandise).
26   [3] Demetrius Bell, *Seattle Releases the 'Kraken' Nickname, Logos And Colors Ahead of 2021-22
     NHL Debut*, Forbes (Jul. 23, 2020, 2:14 PM), https://www.forbes.com/sites/demetriusbell/2020/
     07/23/seattle-kraken-nhl-logos-uniforms-unveiling-nickname-expansion/?sh=13d9ddf539e7.
27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

branded merchandise do not give him exclusivity over the Metropolitans' historical importance to the City of Seattle and the greater hockey community.

The description of Kim's S Seattle Logo in his registration of the mark with the United USPTO is as follows: "The mark consists of the letter 'S' containing the word 'SEATTLE' running from the top of the letter to the bottom with the letters evenly spaced throughout.  The letter 'S' is solid with a solid line bo[]rder."  RJN, Ex. F.  Notably, the trademark registration material expressly states that "*[c]olor is not claimed* as a feature of the mark."  RJN, Ex. G (emphasis added).

When the NHL awarded a franchise to Seattle in 2018, Kim contacted the franchise about whether it was interested in licensing his SM Word Mark and S Seattle Logo for the new team. Compl. at 8 ¶ 19.  The new team decided not to name itself after the Seattle Metropolitans and to use a new identity for itself—the Kraken.  Over the next few years, Kim and his attorneys engaged in sporadic negotiations with the Kraken to license his marks for merchandise sales.  *Id.* at 8–9 ¶¶ 19-31.  Ultimately, these negotiations were not fruitful and the Kraken have never done any financial business with Kim.

### D.    The NHL Winter Classic

The NHL Winter Classic is one of the NHL's most popular annual events and one of just a few marquee outdoor NHL hockey games played each season.[4]  First played on January 1, 2008, at Ralph Wilson Stadium in Buffalo, NY, the NHL Winter Classic game has become a New Year's tradition for hockey fans nationwide that features two NHL teams who, instead of playing in a traditional indoor arena, compete in an open-air baseball or football stadium on a specially created outdoor ice surface.[5]  Because the NHL Winter Classic game also serves as the NHL's annual celebration of ice hockey's origins on frozen lakes and ponds, the event is commemorated by the participating teams wearing uniforms unique to that game that are usually

---

[4] NHL, *History of the NHL Winter Classic*, https://www.nhl.com/kraken/fans/winter-classic (last visited Jan. 18, 2024).
[5] *Id.*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

derived from the team's existing brand identity, the sale by the NHL of limited-edition commemorative merchandise, and fan festivals with NHL-sponsored promotional activities.[6]

The 2024 NHL Winter Classic was promoted and operated by the NHL, which is different than the home games played at Climate Pledge Arena that are promoted and operated by the Kraken.  The 2024 Winter Classic was hosted in Seattle, and as such, the NHL chose to focus the NHL Winter Classic branding and design for the event to complement the Kraken's primary branding, including the Kraken's primary logo, uniforms, and color combinations.[7] The NHL, its jersey licensee (Adidas), and the Kraken collaborated on the design of the Kraken WC Logo commemorating the Kraken's participation in the NHL Winter Classic.  The Kraken WC Logo is the subject of this lawsuit.  It continues the nautical theme but also draws from the Kraken's own trademarks:

**Kraken WC Logo**

**Kraken Primary Logo (U.S. Reg. Nos. 6450361 & 6577561)**





The Kraken WC Logo uses the Kraken's registered primary logo, including the depiction of the Kraken's red eye, and features the word mark "Kraken" prominently within the sea creature "S" shape.  The Kraken WC Logo is displayed on a variety of items, including jerseys, shirts, hats, plush items, and pennants.  Because the Kraken WC Logo is an evolution of the Kraken's primary branding and trademarks, this merchandise is very similar in look and feel to the Kraken's regular-season merchandise as illustrated by the side-by-side images below:

---

[6] *Id.*
[7] Chris Creamer, *2024 NHL Winter Classic: The Logos, Uniforms and More*, SportsLogos.net, https://news.sportslogos.net/2024/01/01/2024-nhl-winter-classic-the-logos-uniforms-and-more/hockey-2/ (Jan. 1, 2024).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17      The Kraken's NHL Winter Classic merchandise was unveiled on November 22, 2023,

18  and is being sold at Kraken retail outlets and at various third-party online and brick-and-mortar

19  retailers including shop.nhl.com, seattlehockeyteamstore.com, and many others.[8]  All of the

20  merchandise bearing the Kraken WC Logo is specifically advertised as Kraken merchandise for

21  the NHL Winter Classic.  Due to the tremendous goodwill associated with the Kraken brand, the

22  similarity of the Kraken WC Logo to the Kraken's S Logo, and the popularity of the NHL

23  Winter Classic event, the Kraken's Winter Classic merchandise has been extremely popular with

24  hockey fans, large numbers of whom have already purchased the Kraken NHL Winter Classic

25

26  _____

27  [8] Alison Lukan, *Winter Classic Jerseys Unveiled*, NHL, https://www.nhl.com/kraken/news/
seattle-kraken-winter-classic-jersey-unveiled (Nov. 22, 2023).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

jersey and have been wearing it to Kraken games this fall and winter to show their support for the Kraken.  Like the inclusion of an "S" shape in the Kraken's primary logo to give a nod to Seattle's original hockey history, the Kraken's NHL Winter Classic jersey also pays tribute to the history of hockey in Seattle by including "1917" in the neckline in reference to Seattle's 1917 win of the Stanley Cup championship, and by including "barber pole" striping as a nod to the era of the Seattle Eskimos and Portland Rosebuds.[9]  However, the jersey's branding is distinctly associated with the Kraken, including the colors and conspicuous and prominent use of the team name "Kraken" on the Kraken WC jersey.

### E.     This Lawsuit

When the NHL selected Seattle as the host city for the 2024 Winter Classic, the Kraken and Kim's representatives briefly discussed whether to use the S Seattle Logo for the event. Compl. at 11-12 ¶ 29.  These discussions were unproductive and the Kraken and the NHL instead decided to use a derivative of the Kraken S Logo for Winter Classic marketing and merchandise.[10]  Kim alleges that the Kraken's engagement in these on-and-off again explorations were conducted in bad faith.  Kim, however, fails to offer ***any*** facts substantiating this claim and the Kraken intend to vigorously defend themselves from Kim's false characterization of the parties' business discussions.  While the Kraken's embrace of the Metropolitans' hockey history in Seattle has unquestionably benefited Kim's own sales of Metropolitans' merchandise, he apparently had his sights set on a far more lucrative payday had the NHL and Kraken adopted his S Seattle Logo for the Winter Classic.  Regardless, the parties' business negotiations are a red herring and legally irrelevant to the elements of Kim's Lanham Act and common law tort claims.

### III.     ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

---

[9] *Id.*
[10] Creamer, *supra* note 7.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

U.S. 662, 678 (2009) (cleaned up).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (cleaned up).  For this reason, courts are "not required to accept as true a legal conclusion couched as a factual allegation."  *PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1170 (W.D. Wash. 2021) (cleaned up).  In resolving a motion to dismiss, "the Court may consider materials incorporated into the complaint by reference, and matters of judicial notice."  *Id.* (cleaned up).  In suits for trademark infringement, a party's trademark registration is a judicially noticeable document that may be considered on a motion to dismiss.  *Id.*

Here, as explained below, Kim fails to sufficiently plead each element of his claims for tortious interference and conversion.  The only allegations he raises are conclusory in nature and belied by other allegations in his Complaint and applicable case law.  The Court should dismiss both claims.

### A.   Kim Fails to State a Claim for Tortious Interference.

Under Washington law, the elements of tortious interference with business expectancy[11] are: "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendant[] had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendant[] interfered

---

[11] The Kraken assume that Kim does not pursue a claim for tortious interference with contractual relations.  The Complaint does not use the word "contract" or otherwise reference any agreement between Kim and any third party.  Any contract-based tortious interference claim necessarily fails.  *See Int'l Paper Co. v. Stuit*, 2012 WL 1857143, at *9 (W.D. Wash. 2012) ("Without allegations of a valid contractual relationship, [Plaintiff] cannot state a claim for tortious interference.").  Any such claim fails for the additional reason that the Complaint does not allege that any existing business partners breached any contracts with the Metropolitans as a result of the Kraken's use of the Kraken WC Logo.  *See* Compl. at 22 ¶¶ 20–24; *Stuc-O-Flex Int'l, Inc. v. Low & Bonar, Inc.*, 2019 WL 4688803, at *5 (W.D. Wash. 2019) ("Plaintiff does not allege any facts suggesting that the … Defendants caused Ural and Waterway to breach their agreement with Plaintiff.").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

for an improper purpose or used improper means; and (5) resultant damage." *Pac. Nw. Shooting Park*, 158 Wn.2d at 351 (cleaned up).  Kim's Complaint is devoid of any facts supporting the first, second, and third elements of tortious interference.  Kim does not identify any specific business relationship with identifiable third parties to demonstrate a valid business expectancy, and because he has not identified any such business relationship he necessarily has not, and indeed cannot, allege that the Kraken *knew* of this relationship.  Nor has Kim pled any facts alleging that third parties terminated their relationships with Kim, let alone how the Kraken induced any such termination.  This Court should dismiss Kim's claim for tortious interference.

### 1.    Kim Fails to Allege the Existence of a Specific Business Expectancy.

Kim's tortious interference claim fails because as both this Court and the Washington Supreme Court have held, "[t]o make a claim for tortious interference with a business expectancy, [a] Plaintiff must identify a 'specific relationship' and 'identifiable third parties'" with which a defendant tortiously interfered.  *See Stuc-O-Flex Int'l*, 2019 WL 4688803, at *6 (quoting *Pac Nw. Shooting Park*, 158 Wn.2d at 352–53); *Monster v. Creatd, Inc.*, 2022 WL 1624713, at *8 (W.D. Wash. 2022) (same).

Kim fails to allege any "specific relationship" or "identifiable third parties."  *See* Compl. at 22 ¶ 22.  Kim offers only the vague and conclusory allegation that the Metropolitans had a generalized business expectancy with unidentified members of the public to sell goods bearing his marks.  *Id*.  This is insufficient.  *See Stuc-O-Flex Int'l*, 2019 WL 4688803, at *6 ("Unspecified references to 'customers' are not enough.") (citation omitted).  "An invitation to some amorphous group of people," such as the general public, "does not magically become a relationship because some members of the group might [purchase the Metropolitans' goods]." *Pac. Nw. Shooting Park*, 158 Wn.2d at 353 n.2.

Likewise, Kim's ownership of Metropolitans trademarks, by itself, does not qualify as a valid business expectancy.  *See* Compl. at 22 ¶ 22 (generic allegation that Kim has a "valid expectation of revenue associated with … Seattle Metropolitan[s] trademark").  A "plaintiff must

DEF.'S MOT. TO DISMISS
(No. 23-cv-01989-JLR) - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

show that the future opportunities and profits are a reasonable expectation and not based on merely wishful thinking." *Sea-Pac Co. v. United Food & Com. Workers Union 44*, 103 Wn.2d 800, 805 (1985).  Without pleading any specifics as to how and with whom the Metropolitans' "valuable intellectual property rights in and to Seattle Metropolitans trademarks and trade dress" are to be exploited—including specifics regarding its "planned sales" and "marketing and licensing operations," *see* Compl. at 22 ¶ 22—Kim's allegations amount to little more than a threadbare recitation of the elements of tortious interference and a hope of future income.  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[]" at the motion to dismiss stage, *Iqbal*, 556 U.S. at 678, and hope alone "is not a valid prospect or business expectancy—it is mere speculation, and speculation does not equate to a valid contract or expectancy," *Diederich .v Providence Health & Servs.*, 2011 WL 13195986, at *2 (W.D. Wash. 2011).

The Complaint's passing reference to Kim's various licensees is insufficient to cure the tortious interference claim.  *See* Compl. at 6 ¶ 13.  This is because Kim fails to allege that these license agreements are valid and enforceable contracts, as is required to state a claim for tortious interference with contract.[12]  Likewise, Kim's allegation of his previous and/or current licensees cannot suffice to plead the existence of a valid business ***expectancy***.  A business expectancy is "any ***prospective*** … business relationship that would be of pecuniary value." *Manna Funding, LLC v. Kittitas Cnty.*, 173 Wn. App. 879, 897 (2013) (emphasis added).  The Complaint contains no allegations regarding any ***prospective*** license relationships with these, or other identifiable, third parties, let alone any facts that would allow this Court to plausibly conclude Kim and the Metropolitans have a valid business expectancy with any third party.

The Court should dismiss the tortious interference claim for failure to identify a plausible business expectancy.  *See, e.g.*, *O'Donnell/Salvatori Inc. v. Microsoft Corp.*, 2021 WL 535128,

---

[12] Even assuming this allegation were sufficient to plead the existence of a valid contract, which it is not, as detailed more below, Kim nonetheless fails to plead that the Kraken's use of the Kraken WC Logo interfered or otherwise induced a breach of these specific license agreements.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

at *5–6 (W.D. Wash. 2021) (dismissing tortious interference claim for failure to allege valid business expectancy with third parties); *Group14 Techs., Inc. v. Nexeon Ltd.*, 2023 WL 3599580, at *3 (W.D. Wash. 2023) (dismissing tortious interference for failure to "identify any specific customers or contracts that the opposing party purportedly interfered with") (cleaned up).

## 2.   Kim Fails to Allege That the Kraken Knew of Any Specific Business Relationships with Identifiable Third Parties.

Kim must also allege that the Kraken had "knowledge of facts giving rise to the existence of the relationship" with which the Kraken allegedly interfered.  *See Calbom v. Knudtzon*, 65 Wn.2d 157, 165 (1964).  To do so, Kim must plead that the Kraken had "awareness of some kind of business arrangement."  *Woods View II, LLC v. Kitsap Cnty.*, 188 Wn. App. 1, 31 (2015) (cleaned up).  Kim fails to do so here.

To start, Kim has not alleged any facts showing that the Kraken had knowledge of "some kind of business arrangement" Kim had with identifiable third parties.  *Id*.  Kim instead only alleges that the Kraken knew of his trademarks and the connection the Metropolitans have to Seattle hockey history.  *See* Compl. at 8 ¶ 18, 17 ¶ 41.  Generalized knowledge about Kim's trademarks and Seattle hockey history, however, are insufficient to state a claim.  Such knowledge is not tantamount to the Kraken's "awareness of some kind of ***business arrangement***," *Kitsap Cnty.*, 188 Wn. App. at 31 (emphasis added), as Kim does not explain anywhere in his Complaint how his Marks are tied to future business relationships.  Indeed, nowhere in his Complaint does Kim allege that the Kraken knew of future deals that Kim had planned, that it knew that Kim sought to further license his marks to any specific third parties, or that Kim had intended to exploit his trademarks with any entity other than the Kraken, who Kim tried and failed to shake down for a license.  In short, Kim has not sufficiently pled that the Kraken had knowledge of Kim's business expectancies.

Nor can Kim allege that the Kraken had such knowledge given the other deficiencies in his Complaint.  As noted above, Kim fails to identify *any* specific business relationship with *any* identifiable third parties that Kim sought to enter into.  Instead, he only has only made

DEF.'S MOT. TO DISMISS
(No. 23-cv-01989-JLR) - 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

generalized allegations of potential lost sales to the general public, which are plainly insufficient. *See Pac. Nw. Shooting Park*, 158 Wn.2d at 353 n.2.  Without any actual alleged business expectancy, it follows that he cannot allege the Kraken had knowledge of any such expectancy. Indeed, where, as here, a plaintiff has failed to identify the existence of a valid business expectancy, this Court has held that the plaintiff cannot sufficiently allege knowledge.  *Graham v. Cingular Wireless LLC*, 2006 WL 354969, at *2 (W.D. Wash. 2006) ("[Plaintiff] has not identified a business expectancy with a third party, and, consequently, he has not alleged that Cingular was aware of the expectancy.").

### 3.  Kim Fails to Allege That the Kraken Terminated the Metropolitans' Business Expectancies.

Even if Kim alleged valid business expectancies by identifying specific business relationships with specific third parties—which he has not—the Complaint lacks any allegations that the Kraken terminated any such expectancies.  The tortious interference claim thus fails for this independent reason.  *See Stuc-O-Flex Int'l*, 2019 WL 4688803, at *4.

Kim provides only conclusory allegations that the Kraken's use of its Kraken WC Logo "interfered with Seattle Metropolitans' valid expectation of future revenue associated with planned sales," Compl. at 22 ¶ 22, and "directly negatively impacted sales of authorized Seattle Metropolitans products," *id.* at 16 ¶ 39.  Mere allusions to loss without tying "those losses to *specific relationships*" do not suffice to plead causation, however.  *Pac. Nw. Shooting Park*, 158 Wn.2d at 352.  And conclusory assertions, "without any supporting factual allegations, [are] insufficient to survive a motion to dismiss."  *Stuc-O-Flex Int'l*, 2019 WL 4688803, at *3 (citing *Iqbal*, 556 U.S. at 678)).  So these allegations cannot suffice to state a claim for tortious interference.[13]

---

[13] Nor are these conclusory assertions plausible in light of the other allegations in Kim's Complaint.  Any claim that Kim and the Metropolitans have had their business expectancies *terminated* is entirely belied by Kim's allegation that the Metropolitans' products "have continuously been marketed," including on its own website, which the Metropolitans link in the complaint.  *See* Compl. at 6 ¶ 11; *see also id.* at 15-16 ¶ 38 (showing Metropolitans goods sold through eBay and Bench Clearers).  To be sure, visiting www.seattle-metropolitans.com/shop

DEF.'S MOT. TO DISMISS
(No. 23-cv-01989-JLR) - 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    Because Kim fails to provide any factual allegations detailing how the Kraken disrupted

2    prospective business relationships with the Metropolitans, the Court should dismiss the tortious

3    interference claim.  Where, as here, a complaint fails to allege a defendant's conduct caused

4    termination of a plaintiff's business expectancies, this Court has held dismissal appropriate.

5    *See, e.g.*, *Stuc-O-Flex Int'l*, 2019 WL 4688803, at *5 ("Plaintiff does not allege any facts

6    suggesting that the … Defendants caused Ural and Waterway to breach their agreement with

7    Plaintiff."); *Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1191 (W.D.

8    Wash. 2019) ("Outside of a formulaic recitation of the tortious interference elements,

9    Bombardier provides no factual allegations to show that any breach of this business expectancy

10   actually occurred."); *St. Marie v. Jefferson Cnty.*, 2023 WL 5509305, at *5–6 (W.D. Wash.

11   2023) (dismissing complaint where plaintiff failed to identify breach or termination of business

12   expectancy as a result of defendant's conduct).

13          **B.      Kim Fails to State a Claim for Conversion.**

14          To state a claim for conversion Kim must allege: "(1) that the defendant willfully

15   interfered with a chattel; (2) that the defendant acted without lawful justification; (3) that the

16   plaintiff was entitled to possession of the chattel; and (4) that the plaintiff was deprived of such

17   possession."  *Batson v. Deutsche Bank Tr. Ams.*, 2017 WL 3754827, at *4 (E.D. Wash. 2017)

18   (citing *Alhadeff v. Meridian on Bainbridge Island, LLC*, 167 Wn.2d 601, 619 (2009)).  Under

19   Washington law, "the essence of conversion is the ***dispossession*** of property from the rightful

20   owner."  *Repin v. State*, 198 Wn. App. 243, 271 (2017) (emphasis added).  Courts routinely

21   dismiss claims for conversion where a plaintiff fails to allege deprivation of possession.  *See,*

22   *e.g.*, *Martin v. Sikes*, 38 Wn.2d 274, 287–88 (1951) (reversing judgment with direction to

23   dismiss action where plaintiff failed to show defendant deprived plaintiff of possession of his

24   _____

25   confirms that goods bearing the Seattle Metropolitans' marks are still available for purchase.  In
     short, Kim's Complaint admits that consumers are, in fact, still able to purchase goods bearing
26   the Metropolitans' marks via multiple online shops, undercutting any claim that the Kraken have
     caused a "termination" of the Kim's purported expectancies in the "further use and enjoyment"
27   of his trademarks.

DEF.'S MOT. TO DISMISS
(No. 23-cv-01989-JLR) - 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

milking machine); *Vyas v. Wallach*, 2006 WL 8454883, at *3 (W.D. Wash. 2006) (dismissing claim where plaintiffs failed to show "they have actually been deprived of … possession"); *Corbis Corp. v. Stone*, 167 Wn. App. 1019, 2012 WL 1020250, at *15-16 (2012) (affirming dismissal where plaintiff could not establish deprivation of possession).

Here, Kim fails to allege that he was deprived of possession of his chattels, i.e., intellectual property.[14]  The Complaint contains no non-conclusory factual allegations that Kim has been deprived of possession of his intellectual property rights, nor has Kim offered any explanation as to *how* the Kraken have actually deprived Kim of possession of his trademarks. In lieu of specifics, Kim only alleges that the Kraken's use of its distinctive Kraken WC Logo has "deprived Seattle Metropolitans from full use and enjoyment" of his trademarks.  Compl. at 21 ¶ 18.  But this allegation is insufficient to state a claim for three reasons: (1) it is a mere conclusory recitation of the elements of the cause of action; (2) it is implausible in light of other allegations in the Complaint; and (3) it is contrary to case law holding that where, as here, a plaintiff maintains the ability to benefit from use of its chattel, there can be no conversion.

*First*, as the Supreme Court explained in *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  556 U.S. at 678. Here, Kim's allegation amounts to little more than a legal conclusion that he has been deprived of property.  Without pleading any specifics as to how the Kraken deprived Kim of possession, this allegation alone is insufficient to state a claim and dismissal is appropriate.  *See Seaside*

---

[14] Although the Washington Supreme Court has held certain intangible assets, such as stock options, are considered chattels to which the tort of conversion of applies, *see In re Marriage of Langham & Kolde*, 153 Wn.2d 553, 565–66 (2005), no Washington state court has held trademarks are chattels subject to conversion.  This is likely for good reason.  Applying the tort of conversion to trademarks "would mean that the tort of conversion could largely displace the IP laws traditionally defining what is an infringement of … trademarks[.]"  4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:70 (5th ed.).  In so doing, "over 100 years of trademark law would be discarded" and the "specifically constructed" law of trademark would be dispensed by plaintiffs, such as Kim, "blithely claiming that [a] defendant 'converted' some symbol of plaintiff."  *Id.*  Put differently, conversion "is the wrong tool for the job," and this Court should dismiss Kim's conversion claim for this reason.  *Id.*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   *Inland Transp. v. Coastal Carriers LLC*, 2018 WL 5926984, at *5–6 (E.D. Wash. 2018)

2   (dismissing conversion claim where plaintiff's conclusory allegations did not explain how

3   defendant deprived plaintiff of its property).

4     ***Second***, Kim's allegation that he has been deprived of the use of his intellectual property

5   is otherwise implausible given the allegations in the Complaint showing that Kim does, in fact,

6   have both possession and the ability to make beneficial use of his trademarks.  For example, Kim

7   alleges that he has "continuously" marketed and sold his branded products, including on his own

8   website (which, as of the filing of this Motion, still offers for sale goods bearing the

9   Metropolitans' logo).  *See* Compl. at 6 ¶ 11; *see also* Seattle Metropolitans, http://seattle-

10   metropolitans.com/shop (last visited Jan. 18, 2024).  Kim also alleges the existence of multiple

11   licensees.  Compl. at 6 ¶ 13.  Likewise, the screenshots Kim includes in his Complaint also belie

12   any claim that he lacks possession and/or beneficial use of the Metropolitans' marks, as these

13   screenshots show goods bearing the Metropolitans' logo are still being sold by the

14   Metropolitans' licensees.  *Compare id*. at 16 ¶ 38 (showing Metropolitans' jersey sold by Bench

15   Clearers) *with id.* at 6 ¶ 13 ("Seattle Metropolitans have multiple licensees, including … Bench

16   Clearers[.]").  Kim's conclusory allegations notwithstanding, Kim has not lost possession of his

17   trademarks, nor has he been deprived of the beneficial use those marks on goods.

18     ***Third***, where, as here, a plaintiff maintains the ability to obtain beneficial use of its

19   chattels, courts have found there can be no conversion as the plaintiff has suffered no

20   dispossession.  *See, e.g.*, *Calence, LLC v. Dimension Data Holdings*, 2007 WL 1526349 (W.D.

21   Wash. 2007).  In *Calence*, for instance, a plaintiff brought suit for conversion against a defendant

22   who downloaded some of the plaintiff's proprietary information.  *Id*. at *7.  This Court held that

23   the plaintiff's claim failed as a matter of law because the plaintiff could still use the information

24   after the defendant's download, and thus had beneficial use of its property.  *Id*.

25     Courts throughout the country have reached the same holding on facts similar to the case

26   at hand.  *See, e.g.*, *Shetel Indus. v. Adin Dental Implant Sys., Inc.*, 493 F. Supp. 3d 64, 123–24

27

DEF.'S MOT. TO DISMISS
(No. 23-cv-01989-JLR) - 15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

(E.D.N.Y. 2020) (no conversion where plaintiff had failed to establish defendants "did anything to exclude [plaintiff] from exercising his rights" over a customer list and had instead alleged only that defendants were also able to use the list); *Lopez v. Aeropostale, Inc.*, 2012 WL 13059794, at *6 (S.D.N.Y. 2012) (dismissing claim where plaintiff did "not allege that Defendants prevented [him] from using or owning the trademarks himself"). Washington courts, in particular, have rejected claims of conversion where a plaintiff pleads interference with, but not full dispossession of, of a chattel. *See Martin*, 38 Wn.2d at 287–88. As the Court of Appeals explained in *Corbis Corp.*, the tort "continue[s] to include deprivation as an element," and it is not enough to allege that a defendant's actions have caused "uncertainty as to title" or a "limited ability to obtain investment." *See Corbis Corp.*, 2012 WL 1020250, at *15.

Kim's allegation that he has been deprived "from full use and enjoyment" of the Metropolitans' marks is akin to claiming conversion for a deprivation of the ability to obtain an investment. This type of allegation did not suffice in *Corbis Corp.* and similarly, should not suffice here.

## IV.   CONCLUSION

Kim's common law tort claims in this case are a transparent attempt to construct a legal safety net should his Lanham Act claims fail, as the Kraken are confident they will. Because the Complaint fails to allege facts as to each element of his state law claims for tortious interference and conversion, the Court should dismiss those claims.

DATED this 19th day of January, 2024.

Davis Wright Tremaine LLP
*Attorneys for Defendant Seattle Hockey Partners LLC*

s/ Bonnie MacNaughton
Bonnie MacNaughton, WSBA # 36110
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1604
Tel: (206) 622-3150; Fax: (206) 757-7700
Email: bonniemacnaughton@dwt.com

DEF.'S MOT. TO DISMISS
(No. 23-cv-01989-JLR) - 16

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

*s/ John D. Freed*
2
John D. Freed, *pro hac vice application*
*forthcoming*
3
50 California Street, Floor 23
San Francisco, CA 94111
4
Tel: (415) 276-6500
Fax:  (415) 276-6599
5
Email: jakefreed@dwt.com

6

7
**CERTIFICATION OF WORD COUNT**

8
    I certify that this memorandum contains 5332 words, in compliance with the Local Civil
9
Rules.

10
*s/ Bonnie MacNaughton*
Bonnie MacNaughton, WSBA # 36110
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax