

1325 Fourth Avenue, Suite 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301
LoweGrahamJones.com

November 1, 2024

The Honorable James L. Robart
UNITED STATES COURTHOUSE
700 Stewart Street, Suite 14128
Seattle, WA 98101

David A. Lowe, Esq.
Direct Dial: 206.381.3303
Lowe@LoweGrahamJones.com

      Re:    *Seattle Metropolitans Hockey LLC v. Seattle Hockey Partners LLC*
             WAWD Case No. 23-cv-1989JLR

Dear Judge Robart:

More than six months ago, the Seattle Metropolitans ("SM") requested three categories of financial information in support of its damages claims. The Kraken responded with a rolling production, and more recently a refusal to produce certain portions of this requested information. Contrary to the Kraken's position, the discovery at issue is relevant, particularly given the broad scope of relevancy in discovery. *Schultz v. Olympic Med. Ctr.*, 2008 U.S. Dist. LEXIS 80848, at *11 (W.D. Wash. Aug. 22, 2008). The Kraken also vaguely assert disproportionality and burden, without specifically articulating and supporting these grounds as required. *Paunovic v. Obi Seafoods LLC*, 2022 U.S. Dist. LEXIS 110647, at *3 (W.D. Wash. June 22, 2022). The Kraken should promptly produce the requested discovery, and SM should be allowed a reasonable extension of the Nov. 5 damages expert report deadline to incorporate the same.

**Topic #1:** SM seeks actual attendance (turnstile, not tickets sold) and revenue information related to 2022-2023 and 2023-2024 home season games. SM contends that the Kraken profited from direct sales of Accused Products, and *also* from increased attendance and resulting increased revenues from tickets, concessions, parking, sponsors, broadcast and other sources related to Accused Services (terms defined in discovery requests). In order to assess this increase in revenues, SM's damages expert needs attendance and revenues for all 41 homes games in the 2023-2024 season and for the prior 2022-2023 season home games to establish a baseline for comparison.

The Kraken produced email summaries for 14 of the 41 home games, but has refused to produce similar documentation for the remaining 27 2023-2024 season home games, any documents for the 2022-2023 season home games, or to answer the following interrogatories:

- Provide attendance/viewership information at all Kraken events for each event of the 2022-2023 and 2023-2024 seasons. . . . include[ing] the number of tickets sold, actual attendees (turnstile), and viewership (TV/cable/stream/radio or other broadcast medium) for each event. (INT 19)

- Provide gross revenue information for all Kraken events for each event of the 2022-2023 and 2023-2024 seasons, broken down by revenues for ticket sales, broadcasting rights, licensing rights, concessions, parking sales, media revenues, or any other revenues associated with each event. (INT 20)



The Honorable James L. Robart
November 1, 2024
Page - 2

The information is relevant, and there is no articulated and supported burden associated with its production.

**Topic #2:** SM seeks the same information for the January 1, 2024 Winter Classic game at T-Mobile Park. Kraken has acknowledged that the NHL is its licensee and that it received a "buy-out" from the NHL for that event, but claims that (1) it has no information on revenues from the Winter Classic event because it was run by its licensee NHL, and (2) it cannot separate out the buy-out payment the NHL made from the Winter Classic event from other payments from the NHL. Kraken further asserts that because SM has attempted to subpoena this information from the NHL, it has no obligation to respond—even though the NHL has not made any production.

First, as the admitted licensor and host of the Winter Classic event, it is within the Kraken's possession, custody or control to obtain requested information regarding attendance and revenues for the event. *United States v. Int'l Union of Petrolium*, 870 F.2d, 1450, 1452 (9th. Cir. 1989) ("actual possession, custody or control of the documents, or . . . legal right to obtain the documents on demand.") Also, third-party possession of documents is not a basis for refusing otherwise discoverable production. *Thomas v. Hickman*, 2007 U.S. Dist. LEXIS 95796, at *54-55 (E.D. Cal. Dec. 5, 2007). Second, the Kraken admits knowing what the NHL paid it last season, and subsumed therein is amount the NHL paid the Kraken as part of the "buy-out" arrangement. If Kraken will not or cannot provide the "buy-out" amount, it can either obtain the information from its licensee or provide the total amount paid by the NHL to the Kraken, which SM will use for its damages report, shifting the burden to the Kraken to prove any claimed offset.

**Topic #3:** SM seeks Kraken's ad/marketing expenditures related in any way to the promotion of Accused Products/Services between November 2023 and March 2024. Kraken claim that ad/marketing expenditures related to the Winter Classic event was by Kraken's licensee, the NHL, but again that is within Kraken's possession, custody or control to obtain as licensor. In addition, Kraken controlled ad/marketing related to other games in which Accused Products were promoted and Accused Services provided between November 2023 and March 2024, including for media/radio/broadcast spends beyond the information provided to date for games in that period, but has refused to provide such discovery, which is highly relevant, at a minimum, to corrective advertising analyses.

The discovery sought is carefully tailored and needed for SM's expert damages report. It is clearly relevant, as outlined above. The Kraken cannot satisfy the high standard for any undue burden and disproportionality, and advances no argument on these grounds. Given the clear relevance and lack of burden, the discovery should be compelled.

Very truly yours,

LOWE GRAHAM JONES[PLLC]

David A. Lowe