

920 Fifth Avenue
Suite 3300
Seattle, WA 98104-1610
206-622-3150 Main Tel
206-757-7204 Fax

**Bonnie MacNaughton**
**Jake Freed**
**Erwin Reschke**

206-757-8204 Direct Tel
bonniemacnaughton@dwt.com

November 1, 2024

**By ECF**

The Honorable James L. Robart
United States District Judge

Re:   *Seattle Metropolitans Hockey LLC v. Seattle Hockey Partners LLC*, 2:23-cv-01989-JLR, Discovery Dispute Letter

Dear Judge Robart:

We submit this discovery dispute letter on behalf of Seattle Hockey Partners LLC ("**the Kraken**").

**Summary of the Case**: On January 1, 2024, the Kraken were the host team for the annual NHL Winter Classic ("**WC**") outdoor hockey game against the reigning Stanley Cup Champions, the Las Vegas Knights. The WC is one of the marquee hockey events of the year and draws a wide audience of hockey fans who attend in person and watch the game on national television. To market the event, the Kraken helped develop and used an adaptation of their original trademarked Kraken "S" logo on player uniforms, merchandise, and branding ("**WC Logo**"). Plaintiff Seattle Metropolitans Hockey LLC ("**Plaintiff**") alleges the WC Logo infringes Plaintiff's trademarks in the logo of the long-defunct Seattle Metropolitans hockey team.

**Non-Winter Classic Revenue:** The WC Logo was used by the Kraken at the WC and several other hockey games and promotional events between December 2023 and March 2024. The Kraken do not dispute that their revenue from these activities is relevant to Plaintiff's damage claims and have produced significant information about these revenues. Where the parties differ is that Plaintiff also is seeking discovery into the Kraken's home-game revenue for the 2022-23 and 2023-24 seasons (including tickets, concessions, parking, television, radio, and sponsorships[1]), despite the fact that the WC Logo did not even exist until late November 2023, and the Kraken did not use the WC Logo during the Kraken's regular season games (except on a few isolated occasions). After extensive conferrals with Plaintiffs' counsel, we understand that Plaintiff wants this information so its expert can determine whether Kraken regular season game attendance (and thus revenues) increased after the WC and potentially intends to seek damages associated with a supposed increase in Kraken revenues. We have shared records with Plaintiff that demonstrate that the Kraken's regular-season ticket sales did not increase post-WC and

---

[1] At issue are Interrogatory Nos. 19-20 and companion RFPs. Interrogatory 19 asks the Kraken to "[p]rovide attendance/viewership information at all Kraken events for each event of the 2022-2023 and 2023-2024 seasons," including "number of tickets sold, actual attendees … and viewership." Interrogatory 20 demands the Kraken provide "gross revenue information for all Kraken events for each event of the 2022-2023 and 2023-2024 seasons, broken down by …ticket sales, broadcasting rights, licensing rights, concessions, parking sales, media revenues, or any other revenues."

July 12, 2023
Page 2

thus, Plaintiff's theory is not supported by uncontroverted facts.[2] But even if regular season attendance had increased, Plaintiff's theory of damages is far too speculative and attenuated to support the wide-ranging discovery it seeks; the use of the WC Logo is only one of many factors that could influence Kraken regular season game attendance, including, among others, the team's win/loss record, the quality of opponent, key player additions and trades, Kraken marketing events, the day of week and game time, and even the Seattle weather for any given game. In short, Plaintiff is on a fishing expedition for discovery that does not support any reasonable theory of damages and which is grossly disproportionate to the needs of this case.

Courts routinely reject discovery requests which seek broad categories of revenue data unrelated to the underlying infringing activity. *See F5 Networks, Inc. v. Kemp Technologies, Inc.*, 2010 WL 11691835, at *4 (W.D. Wash. 2010) (noting that request for "all documents relating to gross revenue, net revenue, and cost for every service provided in relation to every accused instrumentality" was "overbroad and unduly burdensome."). Plaintiff is not entitled to voluminous and broad revenue data on nearly 100 home games—down to every parking fee paid and hot dog sold—when there was no use of the allegedly infringing WC Logo at those games.

**Winter Classic Revenue**: The Kraken have produced all of the WC-specific revenue data they have in their possession, custody, and control, including the payments they received from the NHL as the home team in the WC. But, as the Kraken have explained to Plaintiff's counsel, they do not have financial records differentiating their WC and non-WC payments from the NHL. This is because the Kraken, as one of the NHL's 32 franchises, receives periodic aggregated payments from the NHL that encompass a myriad of commercial activities. To address this issue, the Kraken have been conferring with the NHL's attorneys about Plaintiff's request for this data over the past several weeks—as has Plaintiff's counsel. We understand that the NHL produced WC revenue data to Plaintiff today, presumably rendering Plaintiff's request for Court intervention on this issue unnecessary.

**Advertising and Marketing Information Dispute**: Plaintiff also claims that there is a dispute over the Kraken's production of advertising and marketing budget data. The Kraken are not withholding any non-privileged documents in response to this request. The Kraken produced a document detailing its advertising budget information for the WC, as well as myriad other documents reflecting its WC advertising and marketing expenditures. On October 28, Plaintiff demanded the Kraken also produce documents showing advertising at the handful of non-WC games where the Kraken used the WC Logo. Despite the fact that the Kraken agreed to look for this additional information, Plaintiff declared "we understand that you are refusing to provide this information, and we will bring that up with the court." There is no dispute on this topic for the Court to resolve.

Respectfully submitted,

Davis Wright Tremaine LLP

*/s/ Bonnie MacNaughton*

Bonnie MacNaughton
Jake Freed
Erwin Reschke

---

[2] The Kraken have provided Plaintiff with regular season ticket sales records demonstrating that there was, in fact, no increased ticket sales for regular season games pre-and-post the WC. This makes sense since the vast majority of the Kraken's tickets are purchased by full and partial season ticket holders, negating the potential for a single event like the WC to meaningfully impact ticket sales.